# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7750 | **DATE** | 12/3/2001 |
| **CASE TITLE** | Newson vs. American National Can Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court construes defendant's motion for sanctions [13-1] as a motion for summary judgment and grants the motion in favor of defendant. Plaintiff's case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 04 2001 | |
| | Notified counsel by telephone. | | date docketed | 16 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/3/2001 | |
| | | | date mailed notice | |
| MD courtroom deputy's initials | | 01 DEC -3 PM 4:33 | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RETHA NEWSON, | ) | |
| | ) | |
| Plaintiff, | ) | DEC 0 1 2001 |
| | ) | |
| v. | ) | No. 00 CV 7750 |
| | ) | |
| AMERICAN NATIONAL CAN | ) | |
| COMPANY a/k/a REXAM | ) | |
| BEVERAGE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the court is defendant's motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure ("Rule"). Defendant asks the court to impose sanctions on plaintiff's attorneys for not withdrawing plaintiff's complaint, which alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), on the grounds that the complaint is untimely under controlling Seventh Circuit precedent and therefore not warranted by existing law or by a non-frivolous argument for an extension of the law. As set forth below, the court concludes that sanctions are not warranted, but because the facts are undisputed regarding the timeliness issue, construes defendant's motion as a motion for summary judgment and grants judgment in favor of defendant.



## BACKGROUND

Plaintiff's original attorney, James Roth ("Mr. Roth"), filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") on plaintiff's behalf on February 12, 1996. The charge was signed and dated February 12, 1996 by Ms. Newson and by her attorney Mr. Roth (who was also a notary public). At that time, Mr. Roth also filed an appearance form with the IDHR, which is date stamped "rec'd" by the Chicago office of the EEOC February 12, 1996. The appearance, which is signed by Mr. Roth, states

> James A. Roth, hereby enter the appearance of Retha Newson and our Appearance as their attorney and request that copies of all Pleadings, Orders and other documents be served upon the undersigned for said Party in lieu of service upon the Party.

(Def.'s Mot. for Sanctions, Ex. 3.) The appearance form is signed by Mr. Roth and provides his address and phone number below his name. His address is listed as 333 West Wacker Drive, Suite 2860, Chicago, IL 60606, and phone number as 312/368-4772. On May 17, 1996, Mr. Roth relocated to 161 N. Clark Street, but does not remember informing the EEOC of his move, and there is no documentation in the EEOC's files (as indicated by EEOC investigator, Daniel Lim's affidavit) indicating that Mr. Roth provided a change-of-address form to the EEOC.[1] Mr. Roth does remember submitting a change-of-address form to the U.S. Post Office when he moved from Wacker Drive to Clark Street (although there is no written record of his doing so). Change-of-address forms sent to the post office expire after twelve months, and if the individual

---

[1] Mr. Roth did send (via fax) on or about January 22, 1997, a Notice of Change of Address to the IDHR on behalf of another client Ivette Alvarez, whom he was representing before the IDHR, informing the IDHR that as of May 17, 1996, his address would be at 161 N. Clark Street. (Def.'s Mot. for Sanctions, Ex. 1, Roth Dep. at 18; Ex. 5.) The notice indicates that Mr. Roth's phone number would remain the same. (*Id.*)

2

to whom an envelope is addressed is not located at the address, and the U.S. Post Office has no change-of-address form on file, the envelope is returned to sender and stamped "returned to sender" and "undeliverable as addressed, no forwarding order on file." (Def.'s Mot. for Sanctions, Ex. 6, Brenda Williams Aff. ¶¶ 2-3.) The EEOC sent a right-to-sue letter, dated May 14, 1998, to Mr. Roth by certified mail to his Wacker Drive address. The envelope contained a cover letter addressed to Retha Newson c/o James A. Roth, Esq. and an attached a "Dismissal and Notice of Rights" form letter. The form letter had Ms. Newson's address printed in the upper left hand corner, and indicated in the lower left hand corner that a copy was sent to respondent, American National Can Company. The envelope was stamped "Returned to Sender" and "Undeliverable as Addressed, No Forwarding Order on File." (*Id.*, Exs. 7-8.)

Plaintiff admits that she retained Mr. Roth in February, 1996 to represent her in her action against defendant American National Can Company and that he filed a charge of discrimination with the EEOC in February, 1996. She claims that the EEOC never sent her a right-to-sue letter, and that in June, 2000, her daughter spoke with a receptionist at the EEOC to find out the status of plaintiff's charge. The receptionist told plaintiff's daughter the case had been dismissed and informed plaintiff's daughter that plaintiff should contact someone at the EEOC as she could not provide further information. Plaintiff immediately contacted her attorney, Mr. Roth, by calling the Wacker Drive office, but was informed that Mr. Roth was no longer at that address. Plaintiff states that she received Mr. Roth's new telephone number and called and left a message. When Mr. Roth returned her call, plaintiff asked whether he knew that her EEOC charge had been dismissed. He said he had not heard from the EEOC, but informed plaintiff that she could go to the EEOC office and review her file. (Pl.'s Opp., Ex. 1, Newson Aff. ¶¶ 3-8.) On August 31,

2000, plaintiff received a letter from Mr. Roth stating that as of October 1, 2000, he would no longer represent plaintiff because he was taking an in-house position at a corporation. He also stated in the letter that he had "not received any notices of the disposition of [her] claim" and that "[i]f any notices were sent, [she] should have received a copy of them" and advised plaintiff to "seek other counsel to represent [her] in these matters immediately." (*See id.*, Ex. 2.) According to Mr. Roth, as part of preparing to transfer to a corporation sometime in the summer of 2000 he made a request of the EEOC to review plaintiff's file, and several weeks later, on or about September 11, 2000, he went to the EEOC office and reviewed plaintiff's file. He signed a form dated September 11, 2000, indicating that he received a Notice of Right to Sue in plaintiff's case. (Def.'s Mot. for Sanctions, Ex. 1, Roth Dep. at ¶¶ 26-27; Ex. 10.) On December 11, 2000, exactly 90 days from September 11, 2000, Mr. Roth filed a complaint in this court on plaintiff's behalf.

On October 5, 2000 plaintiff, while at the EEOC on a matter for her husband, spoke to someone regarding her charge and was told to contact an EEOC counselor. She contacted EEOC shortly thereafter and was told her file was not in the office but that someone would call her once the file was pulled. She never received a call from the EEOC. Subsequently, on December 28, 2000, plaintiff received a letter from Mr. Roth in which he stated that he had recently been to the EEOC and obtained a complete copy of her file, including a copy of the May 14, 1998 dismissal letter and notice of right to sue (which he attached to the letter). He informed plaintiff that under the law she had 90 days to file suit in federal court from receipt of that letter, that "[a]pparently, the EEOC sent the notice to an old address and it was not forwarded to me, nor was there any evidence in the file that it had been sent to you," that to protect her interests he filed suit in

federal court within the 90 days and stated that although he expected defendant would file a motion seeking to dismiss the case in that it was not filed from the date that the dismissal was issued, which was May 14, 1998, he believed they could "defeat such an argument based upon the fact that neither of us received actual notice of the dismissal." (Pl.'s Opp., Ex. 3.) He again informed her he would not be practicing in the private sector. (*Id.*) Mr. Roth appeared in court on February 7, 2001 and submitted a motion to withdraw as counsel for plaintiff, which the court granted. Plaintiff thereafter retained attorney Kelvin Bulger ("Mr. Bulger") who appeared on March 12, 2001.

On May 10, 2001 defendant's counsel, Clifford Perry, III ("Mr. Perry") wrote to Mr. Bulger stating that based on his review of the documents and the relevant case law, plaintiff's complaint was untimely and should be dismissed. Mr. Perry reiterated what he had explained in a telephone conversation of the same day that it was defendant's intention to file whatever dispositive motion was necessary, but he would "consider recommending settlement in lieu of briefing this issue." (Def.'s Mot. for Sanctions, Ex. 14.) He did not mention that he would be bringing a motion for sanctions. (*Id.*) The parties engaged in discovery and on July 27, 2001, Mr. Perry wrote to Mr. Bulger regarding the timeliness issue. As with the May 10 letter, Mr. Perry did not mention sanctions, but rather stated that in light of the "very clear" case law in the Seventh Circuit, it was his intention to file a motion for summary judgment "in the event that we are not able to reach a satisfactory resolution of this case in the very near future." (*Id.*)

## DISCUSSION

Title VII and ADA actions must be filed no later than 90 days following receipt of a right-to-sue letter from the Equal Employment Opportunity Commission (the "EEOC"). 42 U.S.C.

§ 2000e-5(f)(1); 42 U.S.C. § 12117(a); *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999). The time period is not jurisdictional and therefore is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982); *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984). However, equitable tolling is "reserved only for situations in which the claimant has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Jones*, 744 F.2d at 1314 (citations omitted). Courts have allowed equitable tolling where the plaintiff "has actively pursued his judicial remedies . . . or has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 62 (1990); *Threadgill v. Moore, U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001).

Although the statutes do not specify who the recipient of the notice must be, the Seventh Circuit case law is unambiguous. *Threadgill*, 269 F.3d at 850. The 90-day time period commences when either the claimant or her attorney actually receives the right-to-sue letter, whichever is earlier. *Id.* (quoting *Jones*, 744 F.2d at 1312); *see also Irwin*, 498 U.S. at 92. As the Seventh Circuit explained,

> Two types of receipt . . . can start the running of the 90-day limitation period, and each does so equally well: actual receipt by the plaintiff, and actual receipt by the plaintiff's attorney (as such receipt constitutes constructive receipt by the plaintiff). Both types of receipt focus on notice to the plaintiff. The attorney's receipt is pertinent only because he is an agent of the plaintiff.

*Threadgill*, 269 F.3d at 850 (internal citation omitted). If the claimant is unrepresented and a notice is delivered to a third party, such as a spouse or child, the clock does not begin running until claimant actually receives it. This is because the claimant should not lose the right to sue because of fortuitous circumstances or events beyond her control which delay her receipt of

6

notice, such as by a third party who is "unfamiliar with the situation or . . . [might] not even read the letter" which "leads to the risk that a claimant could remain in ignorance of his rights until the time to sue had past." *Jones*, 744 F.2d at 1312 (citing *Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*, 585 F.2d 210 (7th Cir. 1978)). On the other hand, if the EEOC delivers notice to a claimant's most recent address on file and it is returned undeliverable because the claimant has failed to provide a new address to the EEOC or take other reasonable measures to ensure receipt of the letter, then the delay is caused by her own fault and the time period begins from the date of EEOC's delivery of the notice to the most recent address provided by claimant. *See St. Louis v. Alverno College*, 744 F.2d 1314, 1316-17 (7th Cir. 1984) (citing 29 C.F.R. § 1601.7(b), which states, in full, "The person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge.").

However, the Seventh Circuit has reasoned that the problems with receipt by an uninformed third party are not present when the third party is the claimant's attorney because "the claimant's attorney, [is] the individual in charge of proceeding with the litigation and aware, perhaps more aware than the claimant, of the importance of such notice." *Jones*, 744 F.2d at 1312. As the court stated, the "most crucial concept in this matter . . . is the actual knowledge that the time period in which a suit can be filed has commenced [and s]uch knowledge is conveyed equally well through personal receipt . . . by the claimant and through receipt of that letter by the attorney representing him in the action." *Id.* at 1313. The date of receipt by an attorney constitutes the date of receipt by the plaintiff where the following are undisputed:

7

(1) the attorney in fact represents the claimant at the time the letter is received; (2) the EEOC was notified of that representation either by the claimant or the attorney; (3) the attorney in fact received the letter; and (4) the date the attorney received the letter. *Id.* at 1314. In *Jones*, letters were sent to the plaintiffs at addresses they had originally given the EEOC, but never received by them, and copies were also sent to their attorneys (who had notified the EEOC they represented plaintiffs and asked for copies of all information sent to plaintiffs). The Seventh Circuit held that even though the plaintiffs did not receive the letters, the 90-day period began when the letter was received by the attorney on January 25, 1982 (this was the date letter arrived at the attorney's office and also the date the attorney personally received the letter). The complaint was not brought until 92 days later and was, therefore, time barred. The court also held that merely because the attorney wanted to wait until the last possible day and thought that the time period ran from the first day the plaintiff's received the letter (which was two days later than he did) was not a sufficient reason for tolling. *Jones*, 744 F.2d at 1314.

Imputing the attorney's notice to the client is reasonable because, as the Supreme Court has stated:

> Under our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

*Irwin*, 498 U.S. at 92 (quotation omitted). The Supreme Court and other circuits have even concluded that receipt by the *attorney's office* constitutes receipt by the attorney and failure of the attorney to learn of and act upon the date of receipt at his office does not toll the limitations because it amounts to no more "garden variety claim of excusable neglect." *See id.* at 93 (time period began when letter arrived at attorney's office on March 23, 1987 while attorney was out of

8

country even though attorney did not actually learn of EEOC action until his return on April 10, 1987); *Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir. 1986) (time period began when letter delivered to attorney's office and signed for by attorney's sister even though letter also sent to plaintiff's home but never received by plaintiff); *Josiah-Faeduwor v. Communications Satellite Corp.*, 785 F.2d 344 (D.C. Cir. 1986); *but see Thomas v. KATV Channel 7*, 692 F.2d 548, 551 (8th Cir. 1982) (requiring attorney to "personally acknowledge" receipt). A district court in the Northern District of Illinois came to the same conclusion by applying the Seventh Circuit's "fault" approach in *St. Louis* to attorneys. *See Davis-Gilbert v. Alberto-Culver Co.* No. 99 C 4014, 1988 WL 121504, *1 (N.D. Ill. Nov. 4, 1988). In *Davis-Gilbert*, the court calculated the time period from delivery to the attorney's office on January 29, 1988 although the attorney and person who usually opens the mail were out of town. The attorney did not actually see the letter until he returned on February 11, 1988, and filed the complaint 84 days thereafter, but 96 days after the letter was received in his office. There was no indication in the court's opinion as to whether the plaintiff also received a copy of the letter. Nevertheless, in reliance on *St. Louis's* holding that a *claimant* must take reasonable steps to ensure claimant receives the notice she requests, together with the principle that a claimant's attorney stands in the shoes of the claimant for purposes of receipt of the letter, the court held *the attorney* had to take reasonable steps to ensure notice was received and to know the date received. The attorney's neglect in failing to have an employee present during his absence who knew the importance of incoming documents could not toll the limitations period, as to do so, "would be to effectively eviscerate the 90 day notice rule and replace it with one which excuses counsel's negligence." *Id.* at *1. In all of these cases, the time period is calculated from when

9

the attorney *should have* acknowledged actual receipt, not when the plaintiff received actual receipt, if at all.

The issue in this case goes one step further than these cases and requires the court to determine whether delivery to the attorney's last known address should be imputed as the date of receipt where the delay in actual receipt is due to the attorney's failure to notify the EEOC of his address, even where the plaintiff herself did not receive a copy of the EEOC notice. Based on the reasoning set forth in the above cases, and specifically in *Irwin, Jones* and *St. Louis* regarding the extent of an attorney's duty, and the particular facts of this case, the court concludes that the Seventh Circuit would impute such constructive knowledge to plaintiff.

Under the EEOC regulations, while it is the responsibility of the "person . . . aggrieved . . . to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge," 29 C.F.R. § 1601.7(b), there is no dispute that plaintiff retained Mr. Roth, an attorney, to file her action, and plaintiff has not denied that Mr. Roth was her designated representative or that he filed an appearance requesting copies of documents be served on him "in lieu" of service on Ms. Newson. Given that he was to receive service in lieu of her, the address he provided to the EEOC became, in essence, her address, and any change of address responsibility that claimant had was placed on him. Moreover, although plaintiff points out several times in her brief that the EEOC never sent her a letter, the EEOC regulation at the time (cited by neither party) did not appear to require as much where the claimant's representative was an attorney:

10

> Unless the complainant states otherwise in writing, after the agency has received written notice of the name, address and telephone number of a representative for the complainant, all official correspondence shall be with the representative with copies to the complainant. *When the complainant designates an attorney as representative, service of documents and decision on the complainant shall be made on the attorney and not on the complainant, and time frames for the receipt of materials by the complainant shall be computed from the time of receipt by the attorney.*

29 C.F.R. § 1614.605(d) (1997) (emphases added).[2] Thus, the EEOC fulfilled its obligation by sending notice to plaintiff's attorney, who failed to file a change-of-address form with the EEOC, and as a result, did not receive the letter where it was delivered. Even though counsel may have provided a forwarding address to the post office that expired before the EEOC's notice was sent, he had a duty to notify the EEOC of the change. Because he did not do so, and had a duty to do so, the time period began at the time of delivery to counsel's most recent address, on or about May 14, 1998, and the filing of the complaint on December 11, 2000, nearly 2 ½ years after the right-to-sue letter was delivered to Mr. Roth's last known address was, therefore, untimely. *Cf. Moore v. Henderson*, No. 00 C 4316, 2001 WL 467933, *3 (N.D. Ill. Aug. 30, 2001) (granting summary judgment to defendant finding the complaint untimely based on the fault of both plaintiff and her attorney because both had relocated and not provided the EEOC with their new addresses and thus the EEOC notices (sent to each) were returned undeliverable).[3]

---

[2] Notably, the more recent version requires the EEOC to send copies to the complainant even where she is represented by an attorney: "Unless the complainant states otherwise in writing, after the agency has received written notice of the name, address and telephone number of a representative for the complainant, all official correspondence shall be with the representative with copies to the complainant. *When the complainant designates an attorney as representative,* service of all official correspondence shall be made on the attorney *and the complainant,* but time frames for receipt of materials shall be computed from the time of receipt by the attorney." 29 C.F.R. 1614.605(d) (1999) (emphases added).

[3] *But see Hawkins v. West*, No. 98 C 2524, 1998 WL 778071 (N.D. Ill. Nov. 2, 1998). In *Hawkins*, an agency sent notice to the attorney and it was returned because of an incorrect address. The attorney phoned the agency to inquire about the status and learned the decision had been issued. The agency sent him a copy and the

(continued...)

Plaintiff argues, however, that the court should apply equitable tolling principles to her case. She asserts a two-fold argument: despite all her diligent efforts she could not have known of the delivery, and her attorney's actions rose above garden-variety neglect. As to the first, when an attorney is involved, because the attorney is the agent of the plaintiff, the courts have imputed even an attorney's neglect to the plaintiff, such that his efforts or lack thereof become hers. *See Irwin*, 498 U.S. at 96, *Jones*, 744 F.2d at 1314. This result is warranted because to do otherwise "would be to effectively eviscerate the 90 day notice rule and replace it with one which excuses counsel's negligence." *Davis-Gilbert*, 1998 WL 121504, at *1. *Cf.* 29 C.F.R. § 1614.605(e) ("The Complainant shall at all times be responsible for proceeding with the complaint whether or not he or she has designated a representative.").

As to plaintiff's second argument, while courts do recognize an equitable tolling exception for extraordinary circumstances, plaintiff has not pointed to any that would warrant tolling in this case. Plaintiff relies on *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236 (3d Cir. 1999). There, a plaintiff received an EEOC letter and followed up with her attorney before the time of filing, but her attorney affirmatively lied to plaintiff by telling her that he had filed a complaint when in fact he had not and promised he would send her a copy but did not. The Third Circuit held that the attorney's conduct deceived her, was more than garden-variety neglect and tolled the limitations period. Plaintiff argues that like the plaintiff in *Seitzinger*, she relied on Mr. Roth's representation that he had not heard from the EEOC and was not aware the case had been dismissed, and that she diligently investigated the status of her case but was

---

³(...continued)
court held that the time limit began when he actually received the copy. *Id.* at * 2. There, however, there was no contention, as here that the failure to receive the letter was the fault of the attorney.

12

unsuccessful in obtaining the EEOC file. She argues her case is even stronger than *Seitzinger* because unlike plaintiff there, she never received any notice from the EEOC of her right to sue. However, by the time plaintiff spoke with Mr. Roth, the time to file her complaint had long since run. Plaintiff has not shown how Mr. Roth's statement to her in June 2000 either misled her, lulled her or induced her into not filing on time. Moreover, the fact that she did not receive notice from the EEOC herself would not warrant tolling since, as set forth *supra*, it is doubtful the EEOC had such a duty under the applicable regulation at the time, but even if it did, the EEOC's negligence does not warrant equitable tolling, especially where her attorney was at fault and should have received notice. *See Biester* v. *Midwest Health Servs., Inc.*, 77 F.3d 1264, 1269 n.2 (10th Cir. 1996) (The fact that "the EEOC violated its own regulations by failing to send a copy of the right to sue letter to [plaintiff's] attorney . . . do[es] not constitute the 'extraordinary' circumstances necessary to justify equitable tolling[.]"). Because the motion for sanctions and response thereto have set forth the undisputed facts governing the timeliness issue, and those facts show that plaintiff's complaint was not timely filed, the court construes defendant's motion for sanctions as a summary judgment motion and grants judgment in favor of defendant.[4]

Although the court concludes that plaintiff's claim is time-barred, the court does not believe that Rule 11 sanctions are warranted. Defendant asks this court to strike the complaint and award costs in defending the action as sanctions upon plaintiff's attorneys for not withdrawing plaintiff's complaint arguing that the complaint was "clearly and unequivocally

---

[4]The standards for summary judgment are well-known and can be found at Fed. R. Civ. P. 56(c) (summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986) (the party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact); and *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor).

13

untimely under controlling and binding Seventh Circuit precedent." (Def.'s Mot. for Sanctions, at 2, 5.) Rule 11(c) provides that sanctions may be imposed against an attorney where a court finds that Rule 11(b)(2) has been violated. Under Rule 11(b)(2), an attorney presenting a pleading or other paper certifies "to the best of the person's knowledge, information, and belief, formed after inquiry reasonable under the circumstances, – . . . the claims, defenses, and other legal contentions are warranted by existing law or by non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" A sanction under Rule 11(c)(2) "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."

The only case cited by defendant in support of sanctions is a case wherein the court granted the defendant's motion to dismiss the claims as time-barred and then granted defendant's separate motion for sanctions because the plaintiff had previously been warned by defendant in a letter that its complaint was groundless and likely in violation of Rule 11 and the plaintiff had promised to voluntarily dismiss inappropriate claims, but upon filing a motion to amend his complaint left most of the original claims in the complaint. *See Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 994 (N.D. Ill. 2001). The standard for imposing sanctions is whether the party's conduct was objectively "reasonable under the circumstances." *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988) (quotation omitted). Several factors bear on whether a signer's inquiry into facts was reasonable, including "whether the case was accepted from another attorney . . . and whether discovery would have been beneficial to the development of the underlying facts." *Id.* (quotation omitted). In the instant case, not only had there not been a Seventh Circuit case decided extending *St. Louis* to an attorney's actions, but Mr. Bulger took

14

over after Mr. Roth had filed the complaint and it is not clear that when defendant's counsel, Mr. Perry, was writing letters to Mr. Bulger in May and July of 2001, sufficient discovery had been undertaken for Mr. Bulger to know that Mr. Roth's conduct was not more culpable than "garden-variety" neglect. Although the court finds that arguments Mr. Bulger has put forward in his response unpersuasive, they are not unreasonable under existing law so as to warrant sanctions. Indeed, as the above discussion reveals, the facts of this case apparently present a question of first impression.

## CONCLUSION

The court construes defendant's motion for sanctions [#13] as a motion for summary judgment and grants the motion in favor of defendant. Plaintiff's case is hereby dismissed with prejudice.

Date: December 3, 2001

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge